IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**SILVARIS CORPORATION d/b/a LowGradeLumber**

        Plaintiff/
        Counterclaim Defendant

Civil Action No. 1:21-CV-00332-TFM-N

v.

**JOSEPH CRAIG,
BRYAN BUSBY,
and SHORELINE PRODUCTS, INC.**

        Defendants/
        Counterclaim Plaintiffs

---

**ANSWER OF DEFENDANTS TO COMPLAINT AND
AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND**

---

Defendants, Joseph Craig, Bryan Busby and Shoreline Products, Inc. ("Defendants"), by and through their attorneys, Lewis Brisbois Bisgaard & Smith LLP, hereby respond to Plaintiff's Complaint and submit their Affirmative Defenses, Counterclaims, and Jury Demand as follows:

## **PARTIES**

1.1    Regarding paragraph 1.1, Defendants are without information to admit or deny Plaintiff's state of incorporation, and so deny the same.

1.2    Defendant Craig admits he is an adult resident of the State of Alabama, and that he has been properly served with process in this action.

1.3    Defendant Busby admits he is an adult resident of the State of Mississippi, and that he has been properly served with the Complaint in this action.

1.4    Defendant Shoreline Products admits that it is a corporation organized under the

laws of the State of Alabama with its principle place of business at 956 North Commerce Park Loop, Suite 10, Gulf Shores, Alabama 36542, and that it has been properly served in this action.

## JURISDICTION AND VENUE

2.1     Defendants admit that this Court has subject matter jurisdiction over this controversy, but deny that the value of Plaintiff's claims exceed $75,000.

2.2     Defendants admit that venue is proper in the Southern District of Alabama, Southern Division, but deny the implied allegations in paragraph 2.2 of torts having taken place within this District.

## VERIFIED FACTS

3.1     Regarding paragraph 3.1, Defendants admit that Plaintiff is a company engaged in the marketing, purchase, and sale of building materials, including roofing materials, lumber, flooring, and panels. Defendants further admit that Plaintiff specializes in secondary markets. Defendants deny the allegations in paragraph 3.1 which are not admitted herein.

3.2     Regarding paragraph 3.2, Defendants admit that Silvaris employs managers and employees to work on customer accounts, and that this work includes marketing, customer identification and product identification. All allegations of paragraph 3.2 not expressly admitted herein are denied.

3.3     Craig admits paragraph 3.3, Busby and Shoreline need not respond to paragraph 3.3.

3.4     Defendants deny paragraph 3.4.

3.5     Regarding paragraph 3.5, Defendants admit that the cited terms appear in the PIIAA appended to the Complaint, and deny the implicit allegation that it is an enforceable contract

between Craig and Silvaris.

3.6    Regarding paragraph 3.6, Defendants admit the PIIAA appended to the Complaint contains the quoted language, and deny the implicit allegation that it is an enforceable contract between Craig and Silvaris.

3.7    Defendants deny paragraph 3.7.

3.8    Regarding paragraph 3.8, Defendants admit that Craig's employment with Silvaris ended in 2019, and that Craig signed a Separation and General Release Agreement. The terms of the Separation Agreement speak for themselves. Defendants deny the allegations in paragraph 3.8 to the extent that paragraph inaccurately recites the terms of the Separation Agreement.

3.9    Craig denies the allegations in paragraph 3.9, as to Busby and Shoreline to the extent the allegations of Craig's breach of the PIIAA and the Separation Agreement may be imputed to either Shoreline or Busby.

3.10   Defendants deny the allegations in paragraph 3.10.

3.11   Regarding paragraph 3.11, Defendants admit that Craig contacted a Silvaris employee regarding working at Shoreline, and denies that the employee was illegally recruited and that the PIIAA was violated.

3.12   Defendants deny the allegations in paragraph 3.12.

3.13   Defendants deny the allegations in paragraph 3.13.

3.14   Regarding paragraph 3.14, Busby admits that Silvaris hired him on December 2, 2013, and that he signed a PIIAA. The PIIAA Busby signed speaks for itself.

3.15   Regarding paragraph 3.15, Busby admits that he was promoted to roofing team lead, and that he managed and maintained certain contracts in that role. The remainder of

paragraph 3.15 is denied.

3.16	Regarding paragraph 3.16, Busby admits that he left Silvaris and began working for Shoreline in the year 2020. Busby denies the allegations of paragraph 3.16 not expressly admitted herein, and Craig and Shoreline deny the allegations of paragraph 3.16 to the extent said allegations are imputed to them.

3.17	Regarding paragraph 3.17, Defendants are without sufficient information to admit or deny what an unidentified customer may have said to Silvaris and so the allegations regarding such communications are denied. The remainder of the allegations in paragraph 3.17 are expressly denied.

## CAUSES OF ACTION
### Count I
### Breach of Contract (Defendants Craig and Busby)

4.1	Defendants Craig and Busby incorporate their Answers to each paragraph above, as though set forth fully herein.

4.2	Paragraph 4.2 is denied.

4.3	Paragraph 4.3 is denied.

4.4	Defendants Craig and Busby deny each allegation in paragraph 4.4.

4.5	Defendant Craig denies the allegations in paragraph 4.5.

4.6	Paragraph 4.6 is denied.

### Count II
### Intentional Interference with Contractual or Business Relations
### (All Defendants)

4.7	Defendants incorporate their Answers to each paragraph above, as though set forth fully herein.

4.8     Regarding paragraph 4.8, Defendants admit that Plaintiff has or had business relationships with its customers, and that Defendants were and are aware of certain of those business relationships.

4.9     Defendants deny paragraph 4.9.

4.10    Defendants deny paragraph 4.10.

4.11    Defendants deny paragraph 4.11.

4.12    Defendants deny paragraph 4.12.

## Count III
### Violation of the Washington Trade Secrets Act
### (West's RCWA 19.108.010)

4.13    Defendants incorporate their Answers to each paragraph above, as though set forth fully herein.

4.14    Defendants deny each of the allegations in paragraph 4.14.

4.15    Defendants deny each of the allegations and each and every claim for relief in paragraph 4.15.

## Count IV
### Violation of the Alabama Trade Secrets Act
### (AL Code Section 8-27-1, et seq)

4.16    Defendants incorporate their Answers to each paragraph above, as though set forth fully herein.

4.17    Defendants deny each of the allegations in paragraph 4.15.

4.18    Defendants deny each of the allegations and each and every claim for relief in paragraph 4.16.

## Count V
## Violation of the Federal Trade Secrets Act
## (18 U.S.C.A. § 1832, et seq.)

4.19    Defendants incorporate their Answers to each paragraph above, as though set forth fully herein.

4.20    Defendants deny each of the allegations in paragraph 4.20.

4.21    Defendants deny each of the allegations and each and every claim for relief in paragraph 4.21.

### PETITION FOR PRELIMINARY INJUNCTION

Defendants previously responded to Plaintiff's petition for a preliminary injunction, and that Response is incorporated herein. See Dkt. 17, *Defendants' Joint Response to Plaintiff's Request for Preliminary Injunction*. Moreover, Plaintiff's Petition for Preliminary Injunction has been denied, Dkt. No. 28, and has not been refiled. Accordingly, no response is presently necessary from Defendants.

### SPECIAL DENIAL

All allegations of the Complaint that require an answer at this time that are not expressly admitted are denied.

### AFFIRMATIVE DEFENSES

1.    Plaintiff is estopped by its own actions from claiming damages against Defendants.

2.    Defendants did not cause or contribute to the injuries or damages of which Plaintiff complains.

3.    Plaintiff's claim against Defendants may be substantially groundless, frivolous or vexatious.

4.  Plaintiff failed to mitigate its damages allegedly resulting from the injury they claim Defendants caused.

5.  Plaintiff may be barred from recovering damages by their consent to the actions underlying the Complaint.

6.  Plaintiff is barred from recovery by its own unclean hands.

7.  Plaintiff's claims for trade secrets fail because Plaintiff has not adequately protected the alleged secrets as such.

8.  Defendants reserve the right to assert further affirmative defenses which may be available.

## COUNTERCLAIMS

Counterclaim Plaintiffs Joseph Craig, Bryan Busby and Shoreline Products, Inc. (where referred to collectively for this Counterclaim, the "Shoreline Plaintiffs") state the following for their Counterclaims against Plaintiff Silvaris.

## PARTIES

1.1  Counterclaim Plaintiff Joseph Craig is an adult Alabama citizen.

1.2  Counterclaim Plaintiff Bryan Busby is an adult Mississippi citizen.

1.3  Counterclaim Plaintiff Shoreline Products, Inc. is a corporation organized under the laws of Alabama, with its principal place of business in Gulf Shores, Alabama.

1.4  Counterclaim Defendant Silvaris (for this Counterclaim, "Silvaris") has alleged in its Complaint in this action, filed in the United States District Court, Southern District of Alabama, that it is a corporation organized under the laws of Washington with its principal place of business in Washington.

## JURISDICTION AND VENUE

2.1     Silvaris has submitted to this Court's jurisdiction by filing its affirmative action against the Shoreline Plaintiffs.

2.2     Venue is proper in this district because at least one Counterclaim Plaintiff resides in this District, and because the events underlying Silvaris' allegations are inextricably intertwined with the allegations underlying the Shoreline Plaintiffs' pleadings.

## FACTS UNDERLYING CAUSES OF ACTION

3.1     Silvaris hired Busby, and later Craig, with promises that they would be able to grow their existing business. At the time Silvaris approached Craig, Craig was managing a division of a competing company called Bridgewell. Silvaris persuaded Craig to merge his division of Bridgewell by promising to Craig that Craig would be able to continue to trade with his best accounts in order to keep up his good relationships with those accounts. Craig relied upon those representations by Silvaris in deciding to join Silvaris.

3.2     Busby was likewise promised that he would be able to keep his best accounts when joining Silvaris. As with Craig, Busby relied on Silvaris' representation that he would be able to maintain his relationships with his best accounts after joining Silvaris.

3.3     In reliance on Silvaris' representations prior to joining Silvaris, Craig and Busby believed that they would be able to continue their business relationships with suppliers and customers. Silvaris knew at the time it hired Busby and Craig that it was planning on changing its format to become a technology company, first and foremost, and a lumber trading company second.

3.4     After Craig and Busby joined Silvaris, with promises that they would be able to

continue their existing business relationships and even expand them, Silvaris' leadership informed them of a change in corporate strategy. Silvaris compelled Craig and Busby to abandon existing accounts and focus on managing the trading floor and growing the business as a single sales entity (Craig), and join the Roofing Team (Busby). By pushing Craig and Busby away from their existing client relationships, Silvaris was able to save significant commissions because Busby and other Silvaris traders, were no longer bringing in customers and suppliers through direct relationships. Instead, Silvaris was able to circumvent its traders' earning business directly and thus avoid paying commissions. By engaging in this strategy Silvaris directly contradicted its own representations made to Craig and Busby. Its traders, including Busby, were then given a cut in commissions and were compelled to accept a salary cap or find another job.

3.5     Silvaris' stated goal, within six months of hiring Busby and Craig, was to close several of the satellite offices and become the "Ebay of Lumber." Silvaris' leadership indicated that it had attempted to become the eBay of lumber when Silvaris first opened, and that it would again pursue that goal within the next 3-5 years.

3.6     Silvaris' goal in becoming a technology company first, and a lumber trading business second, has been and is to limit the commissions paid to its traders. By compelling all sales to go through Silvaris' on-line platform, Silvaris is able to cut commissions by removing the connection between the trader and their pre-existing book of business.

3.7     Since April of 2019, in furtherance of this effort to remove the trader from the business interaction with customers, Silvaris has fired or pushed out approximately thirty traders it had hired around the same time or before Silvaris hired Craig and Busby. These traders were all pushed out to limit commissions and consolidate sales through the online platform.

3.8     Craig and Busby were told prior to joining Silvaris that they would be able to maintain and grow their books of business, and were not told that Silvaris would migrate to a eBay type online business.  Neither Craig nor Busby would have joined Silvaris if they had been informed of Silvaris' purpose, and both relied on Silvaris representations to the contrary which Silvaris knew were false at the time they were made.

3.9     After Craig was pushed out and given a severance, he was specifically informed by Silvaris that he would be able to hire Busby and other Silvaris employees who had worked with Craig before Craig joined Silvaris.

3.10    Upon leaving Silvaris, Craig negotiated a severance contract with Silvaris.  As part of the contract negotiations, Craig was expressly informed that he would be able to pursue three supply contracts and one customer contract which he had before joining Silvaris.  Silvaris had been a stranger to the relationship Craig had with these four companies, and Craig negotiated his severance agreement in reliance on Silvaris' representation that it would not object to Craig picking up those relationships when he left Silvaris.  Craig took a substantially smaller severance payment in reliance on being able to do business with his existing relationships with these four companies.

3.11    Following the end of his employment with Silvaris, and after the Separation Agreement was signed, Craig learned that Silvaris made visits and phone calls to each of the four companies to pursue their business.  Silvaris advised each of the four companies that it was keeping their contracts, and none of the four companies have joined Craig at Shoreline.  Craig started Shoreline relying in part on these four relationships.  Craig and Shoreline have been directly injured by Silvaris' representation that it would not pursue the four companies, which Silvaris

knew or was false, or was reckless regarding the statement's veracity, at the time the representation was made.

3.12   Following Busby's departure to join Craig at Shoreline, Silvaris has refused to pay Busby commissions for sales he made while at Silvaris.  Those commissions are due and owing, and total over $15,000.

3.13   Even after Silvaris pursued the four companies it indicated it would not, and refused to pay Busby commissions owed, Silvaris has continued to take affirmative steps to harm the Shoreline Plaintiffs' business.  Far from Shoreline, Busby or Craig misappropriating Silvaris' technology, Silvaris has copied Shoreline's website.  In particular, Silvaris copied the 'product mix' and manufacturer partner' sections of Shoreline's website in order to directly persuade Shoreline business partners to do business with Silvaris.

3.14   Beyond copying websites, however, Silvaris has made false and disparaging comments to Shoreline Plaintiffs' customers and prospective customers in Mexico and the United States.  Some such comments include that the Shoreline Plaintiffs were not financially strong enough to offer a line of credit; that the Shoreline Plaintiffs had taken deposits for materials and not delivered the products; that Shoreline was not to be trusted and was going to sue Silvaris for 'malpractice;' and additional, documented defamatory statements to customers with which both Silvaris and the Shoreline Plaintiffs do business.

3.15   Silvaris' false and defamatory statements harmed the Shoreline Plaintiffs' reputation with specific customers and potential customers, and in the industry generally.  As a result of this harm to the Shoreline Plaintiffs' reputations, they suffered specific damages in the form of lost past sales and lost relationships which, in turn, will limit future business opportunities.

3.16    Finally, rather than being a legitimate action filed by Silvaris to recoup losses caused by legitimate business torts, this action is an instance of competition by litigation.  Prior to Craig leaving Silvaris, he was informed by Silvaris leadership that it would not interfere with Craig's stating Shoreline, and that Craig would be able to hire Craig's past employees – from before his time at Silvaris – to work with him.  Silvaris is attempting to interfere with legitimate competition by seeking an injunction and damaging the Shoreline Plaintiffs' reputations.

## CAUSES OF ACTION

### Count I
### Negligent Misrepresentation – The Time of Hiring

4.1    Defendants Craig and Busby incorporate their Answers to each paragraph above, as though set forth fully herein.

4.2    Silvaris made representations to both Craig and Busby that if they joined Silvaris, they would be able to maintain their relationships with their existing customers.  Craig's and Busby's earnings were dependent on maintaining these relationships, and Silvaris offered to pay a salary in part based on these existing relationships.

4.3    Silvaris knew at the time it made the representations that it did not intend to honor the representations and that they were false, or it was reckless as to whether the representations were false at the time they were made.

4.4    Silvaris intended that Craig and Busby rely on these representations, and Craig and Busby did rely on the representations, that Silvaris would allow them to continue their existing customer and trader relationships and conduct business with those relationships to earn a significant portion of their salary.

4.5    Silvaris did not honor their representations, and materially changed the sales and

commission structure at Silvaris. This material change in sales and commission structure materially and adversely affected Craig's and Busby's salaries at Silvaris.

4.6     Craig and Busby were harmed by Silvaris' misrepresentations.

## Count II
### Negligent Misrepresentation – Following Busby's Departure from Silvaris

4.7     Shoreline Plaintiffs incorporate the foregoing averments as though fully set forth herein.

4.8     While negotiating his Severance Package, Silvaris represented to Craig that it would 'hand over' three supply contracts and one customer contract to Craig after he left Silvaris. Silvaris knew that Craig brought the four business relationships with him to Silvaris, had not developed them while at Silvaris, and agreed that he would be able to move the contracts to Craig's new business, Shoreline.

4.9     At the time Silvaris made these representations, it knew they were false or was reckless with regard to their truth or falsity.

4.10    Craig relied on Silvaris' statements that it would be able to take these contracts with him, and that Silvaris would not seek to keep these contracts for itself after Craig's departure. Craig negotiated a lower severance pay than he would have if Silvaris had not made the false representations.

4.11    Shoreline Plaintiffs suffered damages by Silvaris' misrepresentations. Craig directly suffered as a result of obtaining a smaller severance, and Shoreline suffered damages by its founder – Craig – having a smaller financial footing at the time Shoreline was started.

### Count III
### Intentional Interference with Contractual or Business Relations

4.12   Shoreline Plaintiffs incorporate the foregoing averments as though fully set forth herein.

4.13   Shoreline Plaintiffs, and each of them, have and had protectable business relationships with certain customers. Silvaris knew of these business relationships.

4.14   Silvaris knew of the business relationships between Busby and Craig prior to Busby and Craig leaving Silvaris' employment, and agreed to allow Busby and Craig to continue those business relationships with those certain customers whom Busby and Craig knew prior to working with Counterclaim Defendant.

4.15   Silvaris voluntarily became, and was in fact, a stranger to Counterclaim Plaintiffs' business relationships after Busby and Craig left Silvaris' employment.

4.16   Silvaris sought to interfere with, and has interfered with, Shoreline Plaintiff's business relationships with those certain customers by attempting to induce and prevent those customers from doing business and continuing to do business with Counterclaim Plaintiffs. Silvaris has interfered with these business relationships by, *inter alia*, making defamatory statements against the Shoreline Plaintiffs and informing customers that Shoreline was suing Silvaris when it was Silvaris who intended to sue the Shoreline Plaintiffs.

4.17   Silvaris' interference has caused the Shoreline Plaintiffs damages, including the pecuniary loss of sales and other revenue, the loss of relationships with customers and suppliers, consequential losses, and harm to the Shoreline Plaintiffs' reputation. Silvaris' actions have been so egregious as to justify an award of both actual and punitive damages.

### Count IV
### Defamation

4.18   Shoreline Plaintiffs incorporate the foregoing averments as though fully set forth herein.

4.19   Silvaris has made numerous statements to third parties which it knew, or reasonably should have known, that the statements were false and harmed the Shoreline Plaintiffs' business reputation simply by being made to the third parties. Those statements included that Shoreline was not financially secure enough to offer credit, that Shoreline intended to sue Silvaris before Silvaris sued Shoreline, and that Shoreline had taken customers' deposits and not delivered products.

4.20   Silvaris' false statements were harmful to the Shoreline Plaintiffs' reputations, and thus caused damages to the Shoreline Plaintiffs even if no actual damages had accrued to the Shoreline Plaintiffs as a result of Silvaris' statements.

4.21   Silvaris' false statements did cause Shoreline Plaintiffs to lose sales as a result of harm to their reputation, and so the false statements caused special damages in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiffs Shoreline Products, Inc., Joseph Craig, and Bryan Busby demand the following relief:

1. That Silvaris Complaint be dismissed with prejudice;
2. That Silvaris take no monetary damages, attorneys fees, or costs;
3. That Silvaris' request for an injunction be denied;
4. That the Shoreline Plaintiffs be awarded monetary damages in an amount to be determined at trial;

5. That the Shoreline Plaintiffs be awarded punitive damages, as provided by Alabama Law;

6. That the Shoreline Plaintiffs be awarded costs and attorney's fees; and

7. That the Shoreline Plaintiffs be awarded an injunction prohibiting Silvaris and its employees, officers and directors to cease making statements which are defamatory or potentially defamatory about the Shoreline Plaintiffs, jointly and individually,

## JURY DEMAND

Defendants requests a trial by jury on all matters so triable.

Dated: June 21, 2022

Respectfully Submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Donald E. Lake, III*
Donald E. Lake, III, Esq.
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
303.861.7760
Tripp.Lake@lewisbrisbois.com

George R. Irvine, III (IRV001)
Laura M. Coker (STR085)
Stone Crosby, P.C.
8820 U.S. Highway 90
Daphne, AL 36526
girvine@stonecrosby.com
lcoker@stonecrosby.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2022, I presented the foregoing **ANSWER OF DEFENDANTS TO COMPLAINT AND AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to the following:

Kyle T. Smith, Esq.
Dentons Sirote PC
2311 Highland Avenue South, Suite 500
Birmingham, AL 35205
kyle.smith@dentons.com
*Attorney for Plaintiff*

Juan Carlos Ortega
Dentons Sirote PC
One St. Louis Centre, Suite 1000
1 St. Louis Street
Mobile, AL 36602
juan.ortega@dentons.com
*Attorney for Plaintiff*

Laura M. Coker
Stone Crosby, P.C.
8820 U.S. Highway 90
Daphne, AL 36526
lcoker@stonecrosby.com
*Attorney for Defendant, Bryan Busby*

Michael A. Heilman
Heilman Law Group
4266 I 55 North, Suite 106
Jackson, MS 39211
mheilman@heilmanlawgroup.com
*Attorney for Plaintiff*

George R. Irvine, III
Stone, Granade & Crosby, P.C.
7133 Stone Drive
Daphne, AL 36526
girvine@stonecrosby.com
*Attorney for Defendant, Bryan Busby*

*/s/ Donald E. Lake, III*
LEWIS BRISBOIS BISGAARD & SMITH LLP