IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SILVARIS CORPORATION<br>d/b/a LOWGRADELUMBER,<br><br>   Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>JOSEPH CRAIG, *et al.*,<br><br>   Defendants/Counterclaim Plaintiffs. | CIVIL ACTION NO. 1:21-cv-332-TFM-N |

## MEMORANDUM OPINION AND ORDER

Pending before the Court *Plaintiff's Motion to Dismiss Defendants' Counterclaims* and memorandum in support.  Docs. 50, 51, filed July 12, 2022.  Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff/Counterclaim Defendant Silvaris Corporation d/b/a LowGradeLumber moves the Court to dismiss the counterclaims that are brought against it by Defendants/Counterclaim Plaintiffs Joseph Craig, Bryan Busby, and Shoreline Products, Inc.  *Id.*  Having considered the motion, response, reply, and relevant law, the Court finds the motion to dismiss is due to be **GRANTED in part and DENIED in part**.

### I.   JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff/Counterclaim Defendant Silvaris Corporation d/b/a LowGradeLumber ("Plaintiff" or "Silvaris") is a citizen of Washington, Defendants/Counterclaim Plaintiffs Joseph Craig ("Craig") and Shoreline Products, Inc. ("Shoreline"), are citizens of Alabama, and Defendant Bryan Busby ("Busby") (collectively, "Defendants") is a citizen of Mississippi.  Doc. 1 at 1-2.  The Court also has subject-matter

jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiffs brings a claim for violation of the Federal Trade Secrets Act,[1] and the Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's state-law claims.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   PROCEDURAL BACKGROUND

The Court previously detailed the procedural background of this matter in its June 6, 2022 Memorandum Opinion and Order but will detail what has occurred since then. *See* Doc. 34. On June 6, 2022, the Court denied Defendants' separate motions to dismiss. *Id*.

On June 21, 2022, Defendants filed their answer to the complaint and asserted counterclaims against Silvaris for negligent misrepresentation (Counts 1 and 2), intentional interference with contractual or business relations (Count 3), and defamation (Count 4). Doc. 36. On July 12, 2022, Plaintiff timely filed its instant motion to dismiss counterclaims and memorandum in support. Docs. 50, 51. Defendants and Plaintiff timely filed their respective response and reply to the motion to dismiss counterclaims. Docs. 55, 56. The motion to dismiss counterclaims is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## III.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

---

[1] Referred to as the Defend Trade Secrets Act of 2016 ("the DTSA"). Pub. L. 114-153, 130 Stat. 376 (2016).

S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence,* 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cnty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231

(11th Cir. 2000) (per curiam)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## IV.     DISCUSSION AND ANALYSIS

Plaintiff argues the following: (1) Defendants' negligent misrepresentation claims are barred by the statute of limitations; (2) Defendants fail to state a plausible claim for negligent misrepresentation; (3) Defendants fail to state a plausible claim for intentional interference with contractual or business relations; and (4) Defendants fail to state a plausible claim for defamation. Doc. 51 at 2-13.  The Court will address each of Plaintiff's arguments in turn.

**A.     Whether Defendants' negligent misrepresentation claims are barred by the statute of limitations**

Plaintiff argues Defendants' negligent misrepresentation claims in Counts 1 and 2 are subject to Alabama's catch-all statute of limitations, which provides a period of two years to bring a claim. *Id.* at 3.  Based on the applicable two-year statute of limitations, Plaintiff argues Defendants' negligent misrepresentation claims in Count 1 are time-barred because the claims were brought on June 21, 2022, and are based on alleged misrepresentations that occurred when Busby and Craig were hired, December 2, 2013, and June 1, 2015, respectively. *Id.* at 3-4.  Further, Plaintiff argues Defendants' negligent misrepresentation claims in Count 2 are time-barred because, again, the claims were brought on June 21, 2022, and are based on alleged misrepresentations that occurred when Craig separated from Silvaris, April 17, 2019, when he signed his Separation and General Release Agreement ("Separation Agreement") that had an effective date of April 4, 2019. *Id.* at 4.

In response, Defendants argue, in Alabama, they are allowed to pursue compulsory

counterclaims that otherwise would have been time-barred when a defendant's compulsory counterclaim exists at the time when a plaintiff's claim accrues, which was October 2020 for at least one of Plaintiff's claims. Doc. 55 at 3. Defendants argue their negligent misrepresentation claims accrued when Busby and Craig discovered, or should have discovered, the facts that constitute the fraud. *Id.* at 3-4. Defendants argue the fraud that constitutes their negligent misrepresentation claims in Count 1 were discovered when Silvaris materially changed the sales and commissions structures after they were hired by Silvaris, which occurred when Silvaris began to "push out" traders, beginning in April 2019. *Id.* at 4-5. Defendants seem to concede the timeline of the accrual of their compulsory counterclaim in Count 1 is not exact but argue if an accrual date for a cause of action for statute-of-limitations purposes is disputed, it is a question of fact that should be decided by a jury. *Id.* at 4. Defendants argue the fraud that constitutes their negligent misrepresentation claims in Count 2 were discovered after Busby and Craig left Silvaris, when Silvaris did not honor its promise to Craig that he could "pick up" three supply and one customer contracts and when Silvaris did not pay Busby commissions that he was owed. *Id.* at 5. In any case, Defendants argue, Craig's separation agreement was signed on April 17, 2019, the statute of limitations for negligent misrepresentation for which would not have run when Plaintiff's causes of action accrued. *Id.*

A compulsory counterclaim is not barred by an otherwise applicable statute of limitations. Therefore, the Court will first address whether Defendants' negligent misrepresentation counterclaims are compulsory.

### 1. Whether Defendants' counterclaims are compulsory

Fed. R. Civ. P. 13(a) governs compulsory counterclaims and provides:

> A pleading must state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim:

Page 5 of 20

>   (A)   arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
>   (B)   does not require adding another party over whom the court cannot acquire jurisdiction.

Eleventh Circuit precedent establishes the "logical relationship" test is used to determine whether a counterclaim is compulsory. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)[2]).

The Court will detail the facts that underly Plaintiff's claims so it can then determine whether those facts serve as the same basis for Defendants' counterclaims. As to Plaintiff's breach-of-contract claim, it alleges Busby and Craig breached their contractual obligations when they violated their respective Proprietary Information and Invention Assignment Agreement ("PIIAA"), and Craig breached his Separation Agreement. Doc. 1 at 8. Plaintiff alleges Busby and Craig utilized Silvaris' Proprietary Information, shared it with Shoreline, and used it in their business for Shoreline. Doc. 1 at 8. Plaintiff further alleges Busby and Craig breached their contractual obligations when they attempted to recruit/recruited Silvaris employees and worked on online products and services that were commercially developed by Silvaris and on which Busby and Craig worked. *Id.* at 8-9. Finally, Plaintiff alleges Craig breached his contractual obligations when he spread false rumors about the business and employees of Silvaris. *Id.* at 9.

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit that were decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

As to Plaintiff's intentional interference with contractual or business relations claim, it alleges, after Busby and Craig left their employment with Silvaris, they sought to interfere with Silvaris' protectable business relationships with certain customers when they disparaged Silvaris to those customers and attempted to induce those customers to cease their business with Silvaris. *Id.*

As to Plaintiff's claims that Defendants violated the Washington Trade Secrets Act, the Alabama Trade Secrets Act, and the DTSA, it alleges Busby and Craig disclosed and used Silvaris' Proprietary Information, in violation of their respective PIIAAs and Craig's Separation Agreement, and Shoreline knowingly received and used the Proprietary Information. *Id.* at 10-14.

As to Defendants' negligent misrepresentation claims, it alleges Silvaris, when it hired Busby and Craig, promised they would be able to maintain their relationships with their existing customers and it knew those representations were false, or it was reckless as to whether they were false, then did not honor those representations. Doc. 36 at 12-13. Defendants also allege, when Silvaris negotiated Craig's Severance Package, it represented to him it would transfer to Shoreline three supply, and one customer, contracts after he separated from Silvaris. *Id.* at 13. Defendants allege Craig brought the four business relationships with him to Silvaris. *Id.* Defendants allege Craig negotiated a lower severance based on the representation that he would be able to maintain those business relationships. *Id.*

Here, Defendants' negligent misrepresentation counterclaims are based on facts that are outside the operative, or aggregate core of, facts that serve as the basis for Plaintiff's claims. While Defendants' negligent misrepresentation counterclaims are based on representations that are alleged to have occurred peripherally to the execution of the PIIAAs and Severance Package, the representations are not incorporated in the documents such that the counterclaims were activated

by the alleged violation of the agreements. *See Republic Health Corp.*, 755 F.2d at 1455. Therefore, the Court finds Defendants' negligent misrepresentation claims are not compulsory.

    **2.    Whether Defendants' permissive counterclaims are barred by the applicable statute of limitations**

A defendant may plead a permissive counterclaim, despite the expiration of the statute of limitations for that claim, "where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in the action." ALA. CODE § 6-8-84; *see Romar Dev. Co., Inc. v. Gulf View Mgmt. Corp.*, 644 So. 2d 462, 473 (Ala. 1994) ("Ala. Code, § 6-8-84 . . . appl[ies] only to permissive counterclaims.").

Since Alabama law[3] does not prescribe a statute of limitations that is specific to a negligent misrepresentation claim, such a claim is subject to a two-year statute of limitations. ALA. CODE § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 235 (Ala. 2014) ("[N]egligent-misrepresentation claims are subject to a two-year statute of limitations. . . ." (citations omitted)). The statute of limitations for a negligent misrepresentation claim begins to run "when the plaintiff discovers, or should have discovered, the fact constituting the fraud." *Bryant Bank*, 155 So. 3d at 235 (citations omitted); *cf. id.* ("A negligent misrepresentation constitutes legal fraud." (citation omitted)). In other words, "the limitations period begins to run when the plaintiff was privy to facts which would provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Id.* at 237 (citations omitted). "The question of when a person of reasonable prudence would have discovered the alleged fraud is generally a question of

---

[3] The parties make their statute of limitations arguments pursuant to Alabama law. Doc. 51 at 3-4; Doc. 55 at 3-5.

fact within the purview of a jury." *Id.*

> When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. However, when a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute-of-limitations purposes is a question of fact to be submitted to and decided by a jury.

*Id.* (citations omitted).

Based on Plaintiff's allegations, the earliest date when one of its claims accrued was on May 22, 2020, when Craig contacted and recruited one of its employees to work at Shoreline. Doc. 1 at 6. Based on the applicable statute of limitations and the framework of Ala. Code § 6-8-84, Defendants' negligent misrepresentation claims must have accrued within two years of the accrual of Plaintiff's claims, which in this case is on or after May 22, 2018. However, based on Defendants' allegations, the Court is unable to determine the exact time when their negligent misrepresentation claims accrued for purposes of the applicable statute of limitations. Therefore, Plaintiff's motion to dismiss Defendants' negligent misrepresentation claims based on the applicable statute of limitations is denied.

**B.    Defendants fail to state a plausible claim for negligent misrepresentation**

Plaintiff argues Defendants fail to allege facts that support the elements of a negligent misrepresentation claim. Doc. 51 at 5. Specifically, Plaintiff argues Defendants fail to allege Silvaris made a false representation of an existing material fact, Defendants do not allege facts that plausibly support the inference that Silvaris knew any statement was false when it was made or represented the statement was true without such knowledge, Defendants fail to plead facts that support the inference that Defendants reasonably relied on the alleged misrepresentations, and Defendants fail to plead facts that plausibly show they were damaged from the alleged misrepresentations based on their reasonable reliance. Doc. 51 at 5-8. Plaintiff also argues

Defendants have not met Fed. R. Civ. P. 9(b)'s heightened-pleading standard for fraud claims. *Id.* at 5.

In response, Defendants argue they met Fed. R. Civ. P. 9(b)'s heightened-pleading standard for fraud claims with respect to each of the elements for their negligent misrepresentation claims. Doc. 55 at 6. As to Defendants' first negligent misrepresentation counterclaim, they argue they alleged Silvaris represented to Busby and Craig they would be able to maintain relationships with existing customers, Busby and Craig relied on Silvaris' representations when they decided to work for Silvaris, and Silvaris planned to become the "eBay of lumber" before Busby and Craig were hired. *Id.* As to Defendants' second negligent misrepresentation claim, they argue they allege Silvaris represented it would allow Craig to bring three supply contracts and one customer contract with him, Silvaris knew the representation was false, and Craig relied on the representation when he negotiated a lower severance payment. *Id.* at 6-7.

Under Alabama law, "[t]he elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was reasonably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Bryant Bank v. Talmage Kirkland & Co., Inc.,* 155 So. 3d 231, 238 (Ala. 2014).

> Defendants allege:
>
> 3.1    Silvaris hired Busby, and later Craig with promises that they would be able to grow their existing business. At the time Silvaris approached Craig, Craig was managing a division of a competing company called Bridgewell. Silvaris persuaded Craig to merge his division of Bridgewell by promising to Craig that Craig would be able to continue to trade with his best accounts in order to keep up his good relationships with those accounts. Craig relied upon those representations by Silvaris in decided to join Silvaris.
>
> 3.2    Busby was likewise promised that he would be able to keep his best account when joining Silvaris. As with Craig, Busby relied on Silvaris' representation that

he would be able to maintain his relationships with his best accounts after joining Silvaris.

3.3     In reliance on Silvaris' representations prior to joining Silvaris, Craig and Busby believed that they would be able to continue their business relationships with suppliers and customers. Silvaris knew at the time it hired Busby and Craig that it was planning on changing its format to become a technology company, first and foremost, and a lumber trading company second.

. . .

3.8     Craig and Busby were told prior to joining Silvaris that they would be able to maintain and grow their books of business, and were not told that Silvaris would migrate to an eBay type online business. Neither Craig nor Busby would have joined Silvaris if they had been informed of Silvaris' purpose, and both relied on Silvaris [*sic*] representations to the contrary which Silvaris knew were false at the time they were made.

. . .

3.10    Upon leaving Silvaris, Craig negotiated a severance contract with Silvaris. As part of the contract negotiations, Craig was expressly informed that he would be able to pursue three supply contracts and one customer contract which he had before joining Silvaris. Silvaris had been a stranger to the relationship Craig had with these four companies, and Craig negotiated his severance agreement in reliance on Silvaris' representation that it would not object to Craig picking up those relationships when he left Silvaris. Craig took a substantially smaller severance payment in reliance on being able to do business with his existing relationships with these four companies.

3.11    Following the end of his employment with Silvaris, and after the Separation Agreement was signed, Craig learned that Silvaris made visits and phone calls to each of the four companies to pursue their business. Silvaris advised each of the four companies that it was keeping their contracts, and none of the four companies have joined Craig at Shoreline. Craig started Shoreline relying in part on these four relationships. Craig and Shoreline have been directly injured by Silvaris' representation that it would not pursue the four companies, which Silvaris knew [ ] was false, or was reckless regarding the statement's veracity, at the time the representation.

Doc. 36 at 8-11.

Based on Defendants' allegations, the representations at issue do not show a false representation of a material fact but are promises of future conduct that are more analogous to a

promissory fraud claim. *See Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1210 (Ala. 2008) ("A claim of promissory fraud is one based upon a promise to act or not to act in the future." (citations and internal quotation marks omitted)). Since Defendants failed to allege a misrepresentation of a material fact, Plaintiff's motion to dismiss Defendants' negligent misrepresentation claims is granted and those claims are dismissed without prejudice.[4]

Further, since a claim for negligent misrepresentation constitutes legal fraud under Alabama law, such a claim is subject to Fed. R. Civ. P. 9(b)'s heightened-pleading standard for fraud claims. *See Bryant Bank*, 155 So. 3d at 235 ("A negligent misrepresentation constitutes legal fraud." (citation omitted)). Fed. R. Civ. P. 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

> "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.* Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in which documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

---

[4] Since the Court has insufficient information as to when Defendants' counterclaims accrued and whether those claims are time-barred, the Court dismisses without prejudice this claim. *Cf. Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) (stating when an order "has the effect of precluding [plaintiff] from refiling his claim due to the running of the statute of limitations . . . [t]he dismissal [is] tantamount to a dismissal with prejudice" (citations omitted) (alterations in original)).

The Court's review of Defendants' alleged facts that support their negligent misrepresentation claims reveals they have not satisfied the requirements of Fed. R. Civ. P. 9(b). Specifically, Defendants have not provided the time and place of each of the representations and who made the representations. Defendants imply the representations at issue occurred around the time when Busby and Craig were hired by Silvaris and when Craig signed his Separation Agreement, but there is a notable lack of an attempt to specify when and where the representations were made and, most notably, who made the representations.

Therefore, Plaintiff's motion to dismiss Defendants' negligent misrepresentation claims because they do not comply with Fed. R. Civ. P. 9(b) is also granted, and those claims are dismissed without prejudice for that separate reason.[5]

### C. Defendants fail to state a plausible claim for intentional interference with contractual or business relations

Plaintiff argues Defendants fail to state a plausible claim for intentional interference with contractual or business relations. Doc. 51 at 8-12. Plaintiff argues Defendants fail to plead facts that support a protectible business relationship because they did not have a reasonable expectation of a commercial benefit due to the fact that Busby and Craig signed their respective PIIAA's, each of which contains non-competition provisions. *Id.* at 8-9. Plaintiff further argues Busby and Craig were agents of Silvaris, who owed Silvaris a duty of loyalty, and could not have had a reasonable expectation of a commercial benefit with customers of Silvaris. *Id.* at 9-10. Plaintiff argues Defendants' allegations that Silvaris was a stranger to Busby and Craig's business relationship are conclusory and such allegations are inconsistent with the PIIAAs, the Separation Agreement, and their duties as agents of Silvaris. *Id.* at 10-11. Finally, Plaintiff argues Defendants' allegations

---

[5] *See supra* note 4.

that they were damaged from the alleged interference are conclusory and Defendants fail to meet the heightened pleading standard for special damages pursuant to Fed. R. Civ. P. 9(g). *Id.* at 11-12.

In response, Defendants argue they allege they had relationships with accounts about which Silvaris knew and to which Silvaris was a stranger before and after Busby and Craig left their employment with Silvaris. Doc. 55 at 11. Defendants argue the PIIAAs are inapplicable to the alleged business relationships that are at issue. *Id.* at 11-12. Defendants also argue only current employees owe a duty of loyalty to their employer and Busby and Craig were no longer employed by Silvaris when it intentionally interfered with their business relationships. *Id.* at 12-13. Finally, Defendants argue they clearly allege the types of damages they suffered and their requested relief. *Id.* at 13-14.

The elements of an intentional interference with contractual or business relations claim are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Ex part Hugine*, 256 So. 3d 30, 60 (Ala. 2017) (quoting *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)). Plaintiff challenges whether Defendants sufficiently allege facts to support each of the elements of their claim for intentional interference with contractual or business relations.

### 1. The existence of a protectible business relationship

> In Alabama, "'protection is appropriate against improper interference with reasonable expectancies of commercial relations even when an existing contract is lacking.'" *Ex parte Ala. Dep't of Transp.*, 746 So. 2d [1263,] 1270 [(Ala. 2000)] (citing RESTATEMENT (SECOND) OF TORTS § 766 cmt. c (1979)). Indeed, "[i]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." RESTATEMENT § 766B cmt. c. "It is the right to do business in a fair setting that is protected." *Utah Foam [Prods., Inc. v. Polytec, Inc.]*, 584 So. 2d [1345,] 1353 [(Ala. 1991)].

> However, "greater protection is given to the interest in an existing contract than to the interest in acquiring prospective contractual relations." RESTATEMENT § 767 cmt. j. The existence of a binding contract is one factor for consideration in the "determination of whether the actor's conduct is improper." *Id.* Thus, the inquiry in this tort is "which interests along the *continuum* of business dealings are protected." Orrin K. Ames III, *Tortious Interference with Business Relationships: The Changing Contours of this Commercial Tort*, 35 CUMB. L. REV. 317, 330 (2004-2005) (emphasis added). The question, in other words, is when has "an expectancy . . . matured to the stage that is deemed worthy of protection from interference." *Id.* at 1331.

*White Sands Grp., L.L.C.*, 32 So. 3d at 14-15.

Here, Defendants allege:

> 3.1  Silvaris hired Busby, and later Craig, with promises that they would be able to grow their existing business. At the time Silvaris approached Craig, Craig was managing a division of a competing company called Bridgewell. Silvaris persuaded Craig to merge his division of Bridgewell by promising to Craig that Craig would be able to continue to trade with his best accounts in order to keep up his good relationships with those accounts. Craig relied upon those representations by Silvaris in deciding to join Silvaris.
>
> 3.2  Busby was likewise promised that he would be able to keep his best accounts when joining Silvaris. As with Craig, Busby relied on Silvaris' representation that he would be able to maintain his relationships with his best accounts after joining Silvaris.
>
> 3.3  In reliance on Silvaris' representations prior to joining Silvaris, Craig and Busby believed that they would be able to continue their business relationships with suppliers and customers. Silvaris knew at the time it hired Busby and Craig that it was planning on changing its format to become a technology company, first and foremost, and a lumber trading company second.
>
> 3.4  After Craig and Busby joined Silvaris, with promises that they would be able to continue their existing business relationships and even expand them, Silvaris' leadership informed them of a change in corporate strategy. Silvaris compelled Craig and Busby to abandon existing accounts and focus on managing the trading floor and growing the business as a single sales entity (Craig), and join the Roofing Team (Busby). By pushing Craig and Busby away from their existing client relationships, Silvaris was able to save significant commissions because Busby and other Silvaris traders, were no longer bringing in customers and suppliers through direct relationships. Instead, Silvaris was able to circumvent its traders' earning business directly and thus avoid paying commissions. By engaging in this strategy Silvaris directly contradicted its own representations made to Craig

and Busby. Its traders, including Busby, were then given a cut in commissions and were compelled to accept a salary cap or find another job.

Doc. 36 at 8-9.

In Defendants' allegations, they describe Busby and Craig's protectible business relationships as "accounts" with which they sought to maintain relationships while they worked for Silvaris. Defendants do not allege there was a contract between Busby and Craig, and their accounts, or their efforts while employed at Silvaris were for more than improving their relationships with those accounts. While it would seem Busby and Craig's commissions were affected by their work for their accounts, commissions would be paid by their employer, Silvaris, and is not a direct payment from their accounts. As to the accounts that Defendants allege Craig was promised he could keep after he left his employment with Silvaris, revealingly Defendants allege, "Silvaris advised each of the four companies that it was keeping their contracts, and none of the four companies have joined Craig at Shoreline," which indicates the companies had contracts with Silvaris. Doc. 36 at 10. In sum, whether Busby and Craig's alleged business relationships, without a defined agreement and based on ad hoc sales, is protectable under the law seems specious to the Court.

### 2. Of which the defendant knew

Defendants allege, at the time Busby and Craig were hired, each was promised by Silvaris they would be able to continue to trade with their best accounts. *Id.* at 8. Whether the business relationships at issue are protectable under the law is a separate inquiry from whether Silvaris knew of the relationships, and, based on the Defendants' allegations, they have alleged enough to show Silvaris knew of them.

### 3. To which the defendant was a stranger

"[I]t is essential to a claim of tortious interference with contractual relations that

> the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered." *Atlanta Market Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 608, 503 S.E. 2d 278, 282 (1998); *see also Alcazar Amusement Co. v. Mudd & Colley Amusement Co.*, 204 Ala. 508, 86 So. 209 (1920)). This is so, because "a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987).
>
> "One is not a stranger to the contract just because one is not a *party* to the contract . . . ." *McLane*, 269 Ga. at 608, 503 S.E. 2d at 282 (emphases added [in *BellSouth Mobility*]). As we recently stated in *Colonial Bank v. Patterson*, 788 So. 22d 134 (Ala. 2000): "[W]hen tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is appropriate under its contract with the other two parties is not recognized."

*Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) (citations and internal quotation marks omitted). Further, the Alabama Supreme Court has recognized "[a] defendant is a party in interest to a [business or contractual] relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Id.* (citation omitted).

Here, Defendants allege Busby and Craig agreed to join Silvaris and continue to trade with their best accounts. Doc. 36 at 8. As to the accounts that Defendants allege Craig was promised he could keep after he left his employment with Silvaris, Defendants allege Silvaris maintained their contracts. *Id.* at 10. Based on Defendants' allegations, Silvaris could not have been a stranger to the alleged business relationships at the time when Busby and Craig either joined or left Silvaris.

  **4.  With which the defendant intentionally interfered**

Here, Defendants allege "Silvaris advised each of the four companies that it was keeping their contract, and none of the four companies have joined Craig at Shoreline," and Silvaris "inform[ed] customers that Shoreline was suing Silvaris when it was Silvaris who intended to sue the Shoreline Plaintiffs." *Id.* at 10, 14. Based on Defendants' allegations, Plaintiff took affirmative

action with regard to accounts with which Defendants intended to transact business and, construing the facts alleged in Defendants' favor, they have pled enough to show intentional interference.

### 5. Damage

"If an item of special damage is claimed, it must be specifically stated." FED. R. CIV. P. 9(g). As to special damages, Defendants allege:

> Silvaris' interference has caused the Shoreline Plaintiffs damages, including the pecuniary loss of sales and other revenue, the loss of relationships with customers and suppliers, consequential losses, and harm to the Shoreline Plaintiffs' reputations. Silvaris' actions have been so egregious as to justify an award of both actual and punitive damages.

Doc. 36 at 14.

Based on Defendants' allegations, the Court finds they have sufficiently pled their claimed special damages that are related to their claim of intentional interference with contractual or business relations.

Yet, in sum, Plaintiff's motion to dismiss Defendants' intentional interference with contractual or business relations claim is granted because their allegations fail as to elements three and, arguably element one, and the claim is dismissed without prejudice.[6]

### D. Defendants fail to state a plausible claim for defamation

Plaintiff argues Defendants have not sufficiently pled special damages for their defamation claim. Doc. 51 at 12. Defendants argue they allege Silvaris made defamatory statements to mutual customers of Silvaris and Shoreline, which caused lost past sales and will limit future business opportunities. Doc. 55. at 14-15.

To establish a prima facie case of defamation, a plaintiff must show:

> [1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either

---

[6] *See supra* note 4.

> actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).

*Fed. Credit, Inc. v. Fuller*, 72 So. 3d 5, 9-10 (Ala. 2011) (alteration in original) (emphasis removed) (citations and internal quotation marks omitted). "Special damages are the material harms that are the intended result or natural consequence of the slanderous statement and the general rule is that they are limited to material loss capable of being measured in money." *Butler v. Town of Argo*, 871 So. 2d 1, 18 (Ala. 2003) (citations and internal quotation marks omitted).

Here, Defendants allege "Silvaris has made false and disparaging comments to Shoreline Plaintiffs' customers and prospective customers," comments which include "Shoreline Plaintiffs were not financially strong enough to offer a line of credit," they "had taken deposits for materials and not delivered the products," "Shoreline was not to be trusted and was going to sue Silvaris for 'malpractice,'" and "additional, documented defamatory statements." Doc. 36 at 11. Defendants further allege the defamatory statements "harmed the Shoreline Plaintiffs' reputation with specific customers and potential customers, and in the industry generally" and as a result "they suffered specific damages in the form of lost past sales and lost relationships which, in turn, will limit future business opportunities." *Id.*

Based on Defendants' allegations, the Court finds they have sufficiently pled their claimed special damages that are related to their claim of defamation. Therefore, Plaintiff's motion to dismiss Defendants' defamation claim for their failure to sufficiently plead special damages is denied.

## V. CONCLUSION

Accordingly, Plaintiff's Motion to Dismiss Defendants' Counterclaims (Doc. 50) is **GRANTED in part and DENIED in part**. The motion to dismiss is **GRANTED** as to Defendants' claims of negligent misrepresentation (Counts 1 and 2) and intentional interference

with contractual or business relations (Count 3), which are **DISMISSED without prejudice**, and

**DENIED** as to Defendants' claim of defamation (Count 4).

**DONE** and **ORDERED** this 20th day of March 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE
